UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

CALIFORNIANS FOR ALTERNATIVES
TO TOXICS, a non-profit
corporation; WILDERNESS WATCH,
a non-profit corporation,
LAUREL AMES, an individual and
ANN McCAMPBELL, an individual,

       NO. CIV. S-05-1633 FCD KJM

      Plaintiffs,

   v.                    MEMORANDUM AND ORDER

JACK TROYER, in his official
capacity; USDA FOREST SERVICE;
GARY SCHIFF, in his official
capacity,

      Defendants.

----oo0oo----

    This matter is before the court on defendants' motion to
dismiss the instant action pursuant to Federal Rule of Civil
Procedure 12(b)(1) on the ground the case no longer presents a
"case or controversy" for purposes of Article III of the United
States Constitution.  Specifically, defendants contend the action
is now moot since subsequent to the court's grant of a
preliminary injunction in favor of plaintiffs, defendant United

1

States Forest Service (the "Forest Service") withdrew the special permit authorizing the California Department of Fish and Game ("CDF&G") to proceed with the project to restore the threatened Paiute cutthroat trout to its historic range in Silver King Creek in the Carson-Iceberg Wilderness in California.  Because there is no "reasonable likelihood" that the Forest Service's administrative decision will be reinstated, in that the project has been cancelled "indefinitely," defendants seek dismissal of the action.  Plaintiffs oppose the motion, arguing defendants' "voluntary cessation" of their wrongful activity does not moot the action.

For the reasons set forth below, the court GRANTS defendants' motion.

### BACKGROUND[1]

In July 2002, the Forest Service issued for public comment an Environmental Assessment ("EA") under NEPA to analyze the effects of authorizing the CDF&G to poison with the aquatic pesticide rotenone certain reaches of Silver King Creek and Tamarack Lake in the Carson-Iceberg Wilderness in the Sierra Nevada in California (the "Project").  (Compl., ¶ 24.)  In March 2003, the Forest Service announced that it would not issue a public decision on the proposed Project but, rather, would decide internally whether to approve it.  (Id.)  The Forest Service

---

[1]    The following statement of facts is taken from plaintiffs' complaint, filed August 15, 2005.  In its motion to dismiss under Rule 12(b)(1), defendants do not deny or controvert any of the allegations in the complaint.  Therefore, for purposes of the motion, the allegations are taken as true.  Trentacosta v. Frontier Pacific Aircraft Industries, Inc., 813 F.2d 1553, 1559 (9th Cir. 1987).

thereafter approved the Project without responding to public
comments on the EA and without preparing a decision document
under NEPA.  (Id. at ¶ 25.)  Conservationists filed suit to
challenge the agency's approval of the Project.  (Id.)
Subsequently, the parties entered into a settlement agreement
whereby the Forest Service agreed to prepare an analysis under
NEPA and the conservationists agreed to dismiss the case.  (Id.
at ¶ 26.)

     In February 2004, the Forest Service issued a draft EA
related to the Project and, following public comment on the draft
EA, issued a Decision Notice to approve it on April 30, 2004 and
a final EA on May 5, 2004.  The Forest Service also issued a
Finding of No Significant Impact ("FONSI") under NEPA stating
that it would not prepare an Environmental Impact Statement
("EIS") for the Project.  (Id. at ¶ 28.)  In July 2005, CDF&G
secured the final Clean Water Act approval for the Project.  (Id.
at ¶ 39.)  CDF&G planned to start to implement the Project on
August 21, 2005.

     On August 15, 2005, however, plaintiffs filed the instant
suit.

     On August 23, 2005 and September 1, 2005, respectively, the
court issued a temporary restraining order and a preliminary
injunction enjoining the Project.  The court found that
plaintiffs made a strong showing of irreparable harm if the
Project was not enjoined and that the balance of interests tipped
decisively in their favor.  As such, to prevail on the motion,
plaintiffs were only required to raise "serious questions" as to
the merits of their NEPA claims (namely, that the Forest Service

3

violated NEPA in failing to prepare an EIS and/or that the
Service's EA was inadequate), which the court found they did.
(Am. Mem. & Order, filed Sept. 1, 2005.)

Thereafter, on September 30, 2005, CDF&G asked the
California State Water Resources Control Board ("State Board") to
rescind the Clean Water Act permit allowing it to commence
poisoning. (Defs.' Ex. A. to Mot., filed Nov. 4, 2005.)
Specifically, CDF&G requested that the State Board "rescind the
. . . permit issued to the [CDF&G] for the Paiute cutthroat trout
Recovery Project" because the "Department has canceled the
project indefinitely" and requested that the annual permit fees
be waived. (Id.)  On October 20, 2005, the State Board rescinded
the permit. (Id. at Ex. B.)

Also, on October 20, 2005, the Forest Service issued a
letter withdrawing the Decision Notice that had granted the
special use permit to CDF&G. (Id. at Ex. C.)  That letter was
forwarded by the Forest Service to plaintiffs on October 25,
2005; it stated in pertinent part:

> Regional Forester Jack Troyer approved the [Decision Notice]
> for use of motorized equipment and piscicides in the
> Silver Creek, Carson-Iceberg Wilderness, on April 30,
> 2004.
>
> The [Decision Notice] is hereby withdrawn.  Approval
> of all activities under the DN is revoked, including
> the use of a power auger and the application of
> piscicides in Silver King Creek.

(Id.)

Before and after issuance of the agency's letter, the
parties conferred related to any motion to dismiss.  Among other
things, plaintiffs proposed that the parties stipulate that the
court would set aside the Decision Notice and that the Forest

4

1  Service would agree to prepare a NEPA analysis before authorizing
2  any similar project affecting Silver King Creek. (Pls.' Ex. C to
3  Opp'n, filed Dec. 23, 2005.)  The Forest Service did not agree.
4  (Id.)  Plaintiffs next proposed that the Forest Service stipulate
5  that if it authorized this or a similar project in the future, it
6  would agree to give plaintiffs and the public advance notice of
7  such a project and the chance to comment upon and appeal it.
8  (Id. at Ex. D.)  The Forest Service did not agree.  Instead,
9  defendants filed this motion, arguing such stipulations were
10 unnecessary as the instant action had become legally moot by
11 virtue of the above actions by the Forest Service and other
12 agencies.

13                            **STANDARD**

14        "A case becomes moot whenever it loses its character as a
15 present, live controversy of the kind that must exist if we are
16 to avoid advisory opinions on abstract propositions of law."
17 Cantrell v. City of Long Beach, 241 F.3d 674, 678 (9th Cir. 2001)
18 (internal quotations and citation omitted.)  "'Simply stated, a
19 case is moot when the issues are no longer 'live' or the parties
20 lack a legally cognizable interest in the outcome.'"  County of
21 Los Angeles v. Davis, 440 U.S. 625, 631 (1979) (citation
22 omitted).  A defendant's voluntary action can render a case moot.
23 However, that defendant bears a "heavy" burden of proof, Friends
24 of the Payette v. Horseshoe Bend Hydroelectric Co., 988 F.2d 989,
25 995 (9th Cir. 1993), that:

26         '(1) subsequent events [have] made it absolutely clear
            that the alleged wrongful behavior [cannot] reasonably
27          be expected to recur, *and* (2) interim relief or events
            have completely and irrevocably eradicated the effects
28          of the alleged violation.'

                                  5

1   <u>Buono v. Norton</u>, 371 F.3d 543, 546 (9th Cir. 2004) (emphasis in

2   original) (citation omitted).  "When both conditions are

3   satisfied it may be said that the case is moot because neither

4   party has a legally cognizable interest in the final

5   determination of the underlying questions of fact and law." <u>City</u>

6   <u>of Los Angeles</u>, 440 U.S. at 631.  Thus, the central inquiry is

7   "whether there can be any effective relief." <u>Cantrell</u>, 241 F.3d

8   at 678; <u>see also</u> <u>Neighbors of Cuddy Mountain v. Alexander</u>, 303

9   F.3d 1059, 1065 (9th Cir. 2002) (only if effective relief is

10  still available to counteract the effects of the alleged

11  violation is the controversy live and present).

12      Specifically in the administrative review context, the Ninth

13  Circuit has held that a case may become moot when the challenged

14  agency decision at issue is rescinded, superceded or has expired.

15  <u>See e.g.</u>, <u>Forest Guardians v. U.S. Forest Service</u>, 329 F.3d 1089,

16  1096 (9th Cir. 2003) (challenge to a Biological Opinion is moot

17  when opinion has been superceded by a later opinion); <u>Nome Eskimo</u>

18  <u>Community v. Babbitt</u>, 67 F.3d 813, 815 (9th Cir. 1995) (case

19  rendered moot when challenged lease sale was cancelled due to

20  lack of bids and Department of Interior had no immediate prospect

21  for another lease sale); <u>Aluminum Co. of America v. Bonneville</u>

22  <u>Power Admin.</u>, 56 F.3d 1075, 1078 (9th Cir. 1995) (challenge to an

23  agency decision was moot when challenged Record of Decision

24  expired).

25                          **ANALYSIS**

26      1.   **Likelihood that Challenged Activity Will Recur**

27      Defendants contend the case is now moot because the Project

28  has been withdrawn, in that all necessary approvals and permits

                                6

have been rescinded, and the Project is cancelled "indefinitely." There is no present intention to re-institute the Project in any respect.   Thus, defendants maintain "it can be said with assurance that there is no reasonable expectation . . . that the alleged violation will recur."  <u>City of Los Angeles</u>, 440 U.S. at 631 (internal quotations and citations omitted).

        This court agrees.   The Project has been withdrawn and cancelled, and there is no intention to restart it; plaintiffs do not dispute these critical facts.   Moreover, even if defendants were to decide to revive the Project there is no reasonable likelihood that they would rely on the same EA *given* this court's issuance of a preliminary injunction against implementation of the Project based on that EA.   Moreover, any future project would likely need to be revised based on new data and scientific information.  (<u>See</u> Reply, filed Jan. 10, 2006, at 4 n. 2.)   Also in that same regard, by statute, should defendants seek to re-institute the Project, they would be required to issue a new administrative decision and provide notice to those who commented on the EA and an opportunity to appeal.  16 U.S.C. § 1612; 36 C.F.R. Part 215.   Accordingly, plaintiffs would have an opportunity to challenge defendants' actions before any alleged harm could recur.

        For these reasons, the cases cited by plaintiffs finding the defendant's voluntary cessation of the alleged illegal activity not sufficient to render the case moot are distinguishable. Significantly, the cited cases involved the voluntary cessation of *ongoing* activities that had already caused harm and could be resumed before judicial review could be obtained.  <u>See e.g.</u> <u>Buono</u>

7

v. Norton, 371 F.3d 543, 546 (9th Cir. 2004) (challenged cross remained standing and the land on which it stood would possibly revert back to the Department of the Interior); Neighbors of Cuddy Mountain v. Alexander, 303 F.3d 1059, 1065 (9th Cir. 2002)(challenged logging had already taken place but mitigation measures were possible to diminish the damage caused); Friends of the Payette v. Horseshoe Bend Hydroelectric Co., 988 F.2d 989, 995 (9th Cir. 1993) (challenged action had taken place and a wetland had been destroyed); De Jong Packing Co. v. U.S. Dep't of Agric., 618 F. 2d 1329, 1337-38 (9th Cir. 1980) (enforcement action against practices of a private company where practices could be resumed at will); Wilcher v. City of Wilmington, 139 F.3d 366, 370 n.2 (3rd Cir. 1998) (involving a challenge to city practice that had been in effect and where defendant "explicitly reserved the right to use [the challenged procedure] in the future"); Sierra Club v. Cargill, 732 F. Supp. 1095 (D. Colo. 1990) (challenged Forest Plan determinations would continue to govern ongoing actions while a new rule was implemented).   In contrast here, there has been no on-the-ground implementation of the Project and judicial review can be obtained before any future implementation of the Project, thus preventing any alleged future harm to plaintiffs.

    That this case involves a "federal defendant" does not, contrary to plaintiffs' arguments, change the analysis. Plaintiffs cite United States v. W.T. Grant Co., 345 U.S. 629 (1953) as holding that "it is inappropriate to dismiss a case as moot when a federal defendant suddenly ceases an allegedly unlawful practice because 'courts have rightly refused to grant

defendants such a powerful weapon against public law
enforcement.'" (Pls.' Opp'n, filed Dec. 23, 2005, at 2. [quoting
W.T. Grant, 345 U.S. at 632]) However, in W.T. Grant, the Court
was referring to voluntary cessation by *private* defendants in
cases brought by the federal government, not suits brought
against the federal government. W.T. Grant, 345 U.S. at 630,
632. Additionally, plaintiffs' reliance on Mannington Mills,
Inc. v. Shinn, 877 F. Supp. 921, 928 (D. N.J. 1995) is also
inapposite. Plaintiffs contend Mannington stands for the
principle that voluntary cessation will not moot cases concerning
"an agency regulation or practice, i.e., a position of general
regulatory significance that the agency can reassert at will."
However, not only did the court in Mannington find that the
agency's withdrawal of its decision *mooted* the plaintiff's claims
for injunctive and declaratory relief, id., but the instant case
does not involve a "position of general regulatory significance."
Rather, this case involves a challenge to a specific agency
permitting decision regarding a specific proposed recovery
action.

Rather than these cases, the Ninth Circuit's decision in
Nome Eskimo Community, involving a federal agency defendant,
provides the most analogous case and the controlling law. There,
the plaintiffs sought a declaration recognizing their aboriginal
rights to the sea floor, an injunction prohibiting mineral lease
sales without the plaintiffs' consent, and an accounting for any
money the Secretary of Interior obtained from the leases.
However, the day after the suit was filed, the court was notified
that the lease sale had been cancelled for lack of bids, and that

9

the Department of Interior had no immediate prospect of another, similar, lease sale.  67 F.3d at 815.  The Ninth Circuit held upon that notification, "That was the end of the 'case,' constitutionally and practically."  Id.

Thus, for all these reasons, the court finds that defendant has met its "heavy" burden to establish the unlikelihood that the alleged violation will recur.

### 2.   Whether Events have Eradicated the Effects of the Alleged Violation

In one sense, this factor is inapplicable to this case as the subject Project never commenced.  As such, subsequent events could not "eradicate" any "effects" of the Project itself. However, in another sense, in deciding whether the case is moot, it is still relevant to determine whether the subsequent events in this case, namely, the withdrawal and cancellation of the Project, have foreclosed any "effective relief" to which plaintiffs may be entitled.  Plaintiffs argue that despite defendants' voluntary cessation of the Project, this court can grant them a declaration finding that defendants violated NEPA by failing to prepare an EIS (thus, "dissuading [defendants] from repeating its illegal practice [Opp'n at 8]") and/or an injunction upon ruling on a motion for summary judgment, barring any future poisoning of the subject area absent compliance with NEPA.

As defendants aptly point out in their reply, plaintiffs' argument ignores that any decision the court may make about the adequacy of the Decision Notice in this case and the 2004 EA would be confined to the facts of that Decision Notice and EA.

10

Yet, those documents have been withdrawn.  They are no longer in effect and any opinion of this court via a declaration would be merely advisory.  Moreover, a prospective injunction would be inappropriate because as set forth above, defendants would not in the future seek to rely on this EA as any new Project would be based on a different project proposal, data, expert opinions, and scientific information.  (Reply at 6.)  Thus, this court cannot grant any injunctive relief relating to a future, unidentified, project as the facts involving any such project are not before it.

Additionally, like the above, the cases relied on by plaintiffs are distinguishable.  See Byrd v. U.S. E.P.A., 174 F.3d 239, 244 (D.C. 1999); Natural Resources Def. Council v. Abraham, 223 F. Supp. 2d 162, 181-82 (D. D.C. 2002).  The courts in these cases found that "effective relief" could be granted because the injury (damage) had occurred from the alleged conduct and could be mitigated or remedied by the court's order.  See also Cantrell, 241 F.3d at 678 (finding demolition of Navel Station insufficient to render case moot because if required to undertake additional administrative review, "the defendants could consider alternatives to the current reuse plan, and develop ways to mitigate the damage to the birds' habitat by, for example, creating new nesting and foraging areas on the land that was formerly the station or utilizing other nearby land for mitigation purposes").  No such mitigation or remedial measures are relevant here as the Project never commenced.

Accordingly, defendants have likewise met their burden to establish that the subsequent events in this case have eradicated

11

any alleged harm to plaintiffs.  There is no present relief this court can award plaintiffs.  Therefore, this case is moot.

**CONCLUSION**

For the foregoing reasons, defendants' motion to dismiss the action pursuant to Federal Rule of Civil Procedure 12(b)(1) is GRANTED.  Defendants' voluntary cessation of the subject Project, in the manner described above, prevents this court from awarding plaintiffs any effective relief, thus rendering the case moot.[2] The Clerk of the Court is directed to close this file.

IT IS SO ORDERED.

DATED: February 24, 2005

/s/ Frank C. Damrell Jr.
FRANK C. DAMRELL, Jr.
UNITED STATES DISTRICT JUDGE

---

[2]    In dismissing the action, the court does not place any specific conditions on defendants, as requested by plaintiffs. Specifically, plaintiffs asked that the court, in conjunction with any dismissal of the action, order the "Decision Notice is set aside" and that the "Forest Service cannot approve or allow the same or similar poisoning project in the Silver King Creek basin without public notice, comment, and an opportunity for interested entities to file an administrative appeal."  (Opp'n at 9.)  For the reasons detailed in this order, no such conditions are merited.  There is no basis to conclude that defendants will not act in accordance with the law in the future; indeed, the United States Supreme Court has instructed that courts should presume that an agency will act in accordance with the law. Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 415 (1971).