1

2

3

4

5

6

7

8

9                    UNITED STATES DISTRICT COURT

10                   EASTERN DISTRICT OF CALIFORNIA

11                        ----oo0oo----

12

13  CALIFORNIANS FOR ALTERNATIVES
    TO TOXICS, WILDERNESS WATCH,
14  LAUREL AMES, and ANN
    MCCAMPBELL,
15                                   NO. CIV. S-05-1633 FCD KJM

         Plaintiffs,
16
         v.                          MEMORANDUM AND ORDER
17
    JACK TROYER, in his official
18  capacity, USDA FOREST
    SERVICE, and GARY SCHIFF, in
19  his official capacity,

20            Defendants.

21                        ----oo0oo----

22

23       This matter comes before the court on plaintiffs

24  Californians for Alternatives to Toxics, Wilderness Watch, Laurel

25  Ames, and Ann McCampbell's (collectively, "plaintiffs") motion

26  for attorney fees, costs, and other expenses, under the Equal

27  Access to Justice Act ("EAJA"), they incurred with respect to a

28  civil action against defendants Jack Troyer, the USDA Forest

Service and Gary Schiff (collectively, "defendants"). Specifically, plaintiffs seek an award of $99,420.00 in attorney fees and $13,693.00 in costs, for a total award of $113,113.00. Defendants oppose plaintiffs' motion on the ground that defendants' position was substantially justified and thus, in accordance with the EAJA's limitations on recovery, no fees should be awarded.  Alternatively, defendants argue that if any fees, costs and other expenses are awarded to plaintiffs, the court should significantly reduce the amount plaintiffs request, awarding no more than $26,359.27 for attorneys fees and costs.

For the reasons set forth below, plaintiffs' motion is GRANTED in part, as the court finds plaintiffs entitled to an award of fees and costs, and DENIED in part, with respect to the amount plaintiffs seek to recover.[1]  In that regard, the court awards plaintiffs $78,402.50 in attorney fees and $12,943.00 in costs, for a total award of $91,345.50.

## BACKGROUND

On April 30, 2004, defendant USDA Forest Service (the "Service") issued a Finding of No Significant Impact ("FONSI") under the National Environmental Protection Act ("NEPA"), indicating that it would not prepare an Environmental Impact Statement ("EIS") and approving the Silver King Creek Paiute Cutthroat Trout Recovery Project (the "Project").  The Project authorized the California Department of Fish and Game ("CDF&G") to apply the pesticide rotenone to certain areas of Silver King

---

[1]    Because oral argument will not be of material assistance, the court orders this matter submitted on the briefs. E.D. Cal. L.R. 78-230(h).

2

Creek and Tamarack Lake in the Carson-Iceberg Wilderness in California.  (Pls.' Compl., filed August 15, 2005, ¶ 28.)

Subsequently, on August 15, 2005, plaintiffs brought suit against defendants, alleging the Service violated NEPA and the Administrative Procedure Act ("APA") by failing to prepare an EIS and/or prepare an adequate Environmental Assessment ("EA") for the Project.  (Pls.' Compl. at ¶¶ 59-79.)  On August 23, 2005, the court issued a temporary restraining order ("TRO") and, shortly thereafter, a preliminary injunction ("PI") enjoining the Project.  (Am. Mem. & Order, filed September 1, 2005, at 3:5-7.)[2] The court held that the balance of hardships both parties would incur if the Project were implemented tipped in favor of plaintiffs, and plaintiffs sufficiently raised "serious questions" as to the merits of their NEPA claims.  (Id.) Ultimately, the CDF&G cancelled the Project "indefinitely." (Defs.' Mot. to Dismiss, filed Nov. 4, 2005, Ex. A.) Additionally, the Service withdrew its Decision Notice authorizing the CDF&G to apply rotenone.  (Id. at Ex. C.)

On November 4, 2005, defendants filed a motion to dismiss plaintiffs' complaint pursuant to Federal Rule of Civil Procedure 12(b)(1), arguing that plaintiffs' action had become legally moot as there was "'no reasonable expectation . . . that the alleged violation' would recur.'"  (Dfs.' Mot. to Dismiss at 7:3-6, quoting City of Los Angeles v. Davis, 440 U.S. 625, 631 (1979).) The court granted defendants' motion, as defendants satisfied

---

[2]   Hereinafter, all references to "Am. Mem. & Order" refer to the court's order on the motion for a PI, filed September 1, 2005.

their burden of establishing the unlikelihood that the alleged violation would recur, and defendants voluntarily ceased implementation of the Project such that plaintiffs were no longer harmed.  (Mem. & Order, filed February 27, 2006, at 10:5-7, 11:27-28, 12:1-2.)

Plaintiffs now seek to recover attorney fees, costs and other expenses under the EAJA for all four stages of litigation in this action, the motion for a TRO, the motion for a PI, the motion to dismiss, and this motion for fees.

**STANDARD**

Under the EAJA, a court "shall award" attorney fees, costs and other expenses to a "prevailing party" in a civil action "brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust."  28 U.S.C. § 2412(d)(1)(A).

In the absence of a statutory definition, a plaintiff is a "prevailing party" for purposes of the EAJA if he or she "succeed[s] on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit."  See United States v. Real Property Known as 22249 Dolorosa Street, 190 F.3d 977, 981 (9th Cir. 1999) (internal citations and quotation marks omitted).  Specifically, where a plaintiff is granted a preliminary injunction, he or she is a prevailing party under the EAJA despite the "subsequent mooting" of his or her case.  See Watson v. County of Riverside, 300 F.3d 1092, 1096-97 (9th Cir. 2002).

1    However, a plaintiff is not entitled to attorney fees, costs
2    and other expenses in a civil action against the United States,
3    despite satisfying the "prevailing party" test, if the
4    government, bearing the burden of proof, demonstrates that its
5    position "was substantially justified or that special
6    circumstances make an award unjust."  28 U.S.C. § 2412(d)(1)(A);
7    see Barry v. Bowen, 825 F.2d 1324, 1330 (9th Cir. 1988).

**ANALYSIS**

**I. Prevailing Parties**

10   The court is required to treat a party succeeding on a claim
11   for a PI as a "prevailing party" for EAJA purposes where the PI
12   satisfied a primary purpose of the lawsuit.  Watson, 300 F.3d at
13   1096.  Here, plaintiffs sought to stop defendants from
14   implementing the Project until, minimally, defendants prepared an
15   EIS in compliance with NEPA.  (Pls.' Mot. for Att. Fees, filed
16   May 19, 2006, at 2:3-5; Pls.' Compl. at 19:3-4.)  The court
17   subsequently issued a TRO and a PI, enjoining defendants from
18   executing the Project.  (Pls.' Mot. for Att. Fees at 2:4-14).
19   Indeed, as a result of the court's decision to issue the PI, the
20   Project was permanently halted--the plaintiffs' precise objective
21   in bringing suit against defendants.  (Id. at 2:27-28, 3:1.)
22   Consequently, plaintiffs are the prevailing party under the EAJA.
23   Further, the court notes that defendants did not contest this
24   issue, and thus, apparently concede that plaintiffs are the
25   prevailing parties for purposes of the EAJA.  (Dfs.' Opp'n, filed
26   June 20, 2006.)

27
28

## II. Substantial Justification of the Underlying Action and Litigation Position

Even if a party prevails in a civil action against the United States, as required by the EAJA for recovery, the government may nonetheless escape liability for attorney fees, costs and other expenses incurred by the prevailing party if its position is "justified to a degree that could satisfy a reasonable person" both in law and fact. Pierce v. Underwood, 487 U.S. 552, 565 (1988); Bowen, 825 F.2d at 1330. The Ninth Circuit has specifically rejected the argument that the EAJA's 1985 legislative history implicated a more stringent standard of justification than reasonableness. Kali v. Bowen, 854 F.2d 329, 332 (9th Cir. 1988). The Ninth Circuit applies the "totality of circumstances" test, requiring that the court conduct a two-part inquiry in determining whether the government's position was substantially justified. League of Women Voters v. FCC, 798 F.2d 1255, 1258 (9th Cir. 1986). The court must review both the government's litigation position and underlying government action at issue for reasonableness. Id.

Importantly, "that the government lost [on a claim] does not raise a presumption that its position was not substantially justified." Oregon Environmental Council v. Kunzmam, 817 F.2d 484, 498 (9th Cir. 1987)(citing In re Hill, 775 F.2d 1037, 1040 (9th Cir. 1985)). Furthermore, the Ninth Circuit has refused to automatically deem the government unjustified simply because its underlying action was unreasonable. United States v. Marhoff, 277 F.3d 1156, 1164 n.5 (9th Cir. 2002).

1    Plaintiffs first argue that defendants' underlying action

2    was unreasonable, as defendant Service violated NEPA by preparing

3    an EA but failing to prepare an EIS.  (Pls.' Mot. at 4:19-28,

4    5:8-11.)  NEPA permits an agency to prepare an EA 1) if an EIS is

5    not required or 2) to determine whether to prepare an EIS.

6    Foundation for North American Wild Sheep v. U.S. Dep't of

7    Agriculture, 681 F.2d 1172, 1178 (9th Cir. 1982).  However, an

8    agency must prepare an EIS where "substantial questions are

9    raised whether a project may have a significant effect upon the

10   human environment . . . ."  Id. (quoting City & County of San

11   Francisco v. United States, 615 F.2d 498, 500 (9th Cir. 1980)).

12   In that regard, the Ninth Circuit has held that an agency's

13   preparation of only an EA and a programmatic environmental impact

14   statement ("PEIS") are unreasonable agency actions, for EAJA

15   purposes, if neither analysis "provides the information

16   'necessary reasonably to enable the decision-maker to consider

17   the environmental factors and to make a reasoned decision.'"

18   Oregon Environmental Council v. Kunzman, 714 F.2d 901, 904 (9th

19   Cir. 1983) (quoting Westside Property Owners v. Schlesinger, 597

20   F.2d 1214, 1217 (9th Cir. 1979)).  In the first phase of

21   litigation in Kunzman, the plaintiffs brought suit against the

22   defendants, including the U.S. Secretary of Agriculture, seeking

23   a PI to stop the defendants from authorizing or implementing a

24   program where a chemical insecticide would be sprayed in an

25   Oregon residential area.  Kunzman, 714 F.2d at 901.  The Ninth

26   Circuit, in reversing the district court's ruling that the

27   defendants had not violated NEPA, noted that neither the EA or

28   PEIS addressed the program's effects upon the residential

1  population in the region, nor did they consider the "carcinogenic
2  effects" of the chemical's by-product.  Id. at 904-905.
3  Consequently, the district court determined that the government's
4  position was not substantially justified, as its pre-litigation
5  actions were "unreasonable," under the EAJA, and it never
6  admitted to the PEIS and EA's deficiency.  Oregon Environmental
7  Council v. Kunzman, 1984 U.S. Dist. LEXIS 24481 *4 (D. Ore.
8  1984).

9       Similarly here, in granting a PI to plaintiffs, the court
10  noted that plaintiffs raised a "serious question as to whether
11  plaintiffs' experts' comments and objections on the EA . . . were
12  adequately addressed by the [Forest] Service" such that a
13  "controversy existed sufficient to trigger an EIS."  (Am. Mem. &
14  Order at 7:26-27, 8:1-6.)  Additionally, the court found that
15  plaintiffs successfully raised a substantial question "since the
16  Project's inception" as to whether there was "a high probability
17  that rare and endemic species live[d] in the Project area" that
18  might effect the human environment, to warrant an EIS.  (Id. at
19  8:24-27, 9:5-21.)  "Preparation of an EIS is mandated where
20  uncertainty may be resolved by further collection of data . . .
21  ."  National Parks & Conservation Ass'n v. Babbitt, 241 F.3d 722,
22  732 (9th Cir. 2001).  Accordingly, the court finds that defendant
23  Service's action, in failing to prepare an EIS where a
24  controversy might exist and where a project's effects were highly
25  uncertain or involved unknown risks, was "unreasonable" for
26  purposes of the EAJA.  (Id. at 7:2-16, 8:1-10, 8:24-27.)

27       Additionally, defendants prepared the EA in an untimely
28  manner, further supporting a finding of unreasonableness under

1  the EAJA.  As "proper timing is one of NEPA's central themes," an

2  agency must prepare an assessment so that it "'can serve

3  practically as an important contribution to the decisionmaking

4  process . . . .'"  Save the Yaak Committee v. Block, 840 F.2d

5  714, 718 (9th Cir. 1988) (quoting 40 C.F.R. § 1502.5 (1987)).  In

6  Block, the defendant USDA Forest Service awarded reconstruction

7  contracts for a road before preparing EAs, and construction began

8  before the Forest Service prepared a biological assessment

9  ("BA").  Id. at 716-717.  In fact, the defendants began

10  constructing one section of the road without completing an EA.

11  Id. at 716.

12      Similarly, the court noted here that defendants chose "in

13  2002 not to conduct a full NEPA analysis" and, after "promising

14  to perform the requisite analysis," waited two years before

15  completing the subject EA in compliance with NEPA.  (Am. Mem. &

16  Order at n.8.)  Further, defendants failed to answer Lahontan

17  Regional Board's inquiries in a timely manner, instead requesting

18  the State Water Board to "review the Lahontan Board's actions and

19  grant the permit" required to move forward with the Project.

20  (Id.)  As in Block, defendants here delayed in conducting an

21  appropriate NEPA analysis, rendering the government's underlying

22  actions unreasonable for purposes of the EAJA.[3]

23

24      [3]  Defendants argue that the court's comments during the
preliminary injunction proceedings, namely that the case was
25  difficult to decide, "plainly indicate" that the government's
position was substantially justified.  (Dfs.' Opp'n at 6:10-23.)
26  Additionally, defendants recount their arguments in opposition to
plaintiffs' motions for a TRO and PI as evidence of substantial
27  justification.  (Id. at 6:23-28, 7:1-5.)  The court finds both
arguments unsatisfactory in light of the court's final decisions
28                                                   (continued...)

9

1    Finally, the Ninth Circuit has held that "fees generally

2 should be awarded where the government's underlying action was

3 unreasonable even if the government advanced a reasonable

4 litigation position." <u>United States v. Marolf</u>, 277 F.3d 1156,

5 1159 (9th Cir. 2002); <u>see also</u> <u>High Sierra Hikers Association v.</u>

6 <u>Blackwell</u>, CIV. 00-01239 (9th Cir. [Appellate Comm'er Dec.] Mar.

7 16, 2006)(Ex. E to Pls.' Mem. of P. & A., filed May 19, 2006, at

8 11).  Therefore, even if the court found defendants' litigation

9 positions, against the motions for a TRO and a PI, to be

10 marginally reasonable, the court does not find defendants'

11 overall position substantially justified for purposes of the EAJA

12 in light of defendant Service's unreasonable underlying actions.[4]

13                    **III. Special Circumstances**

14    The case involves no special circumstances that would make

15 an award of fees unjust.  The merits of the case did not involve

16 a novel, important and doubtful, or close question.  <u>Cf. United</u>

17 <u>States v. Gavilan Joint Community College Dist.</u>, 849 F.2d 1246,

18 1249 (9th Cir. 1988).  Neither does the case involve an issue

19 upon which "reasonable minds could differ . . . ."  <u>League of</u>

20

21        [3](...continued)
22 to grant a TRO and PI to plaintiffs.  Having already analyzed and
   rejected defendants' arguments, the court does not now repeat
23 that analysis.

24        [4]    Defendants also point to the court's decision to grant
   their motion to dismiss plaintiffs' complaint, after the case was
25 rendered moot, as reflecting the government's reasonable
   litigation position.  (Dfs.' Opp'n at 11:16-20.)  However,
26 defendants' success on the motion to dismiss does not preclude
   the court from rejecting their substantial justification defenses
27 on the motions for a TRO and PI. Instead, the court acknowledges,
   and takes into account, defendants' success on the motion to
28 dismiss when calculating plaintiffs' fee award.

1   <u>Women Voters v. FCC</u>, 798 F.2d at 1260.  Further, defendants do

2   not contend that special circumstances preclude the court from

3   awarding attorney fees, costs, and other expenses under the EAJA.

4   **IV. Calculation of Attorney Fees**

5       The EAJA requires a prevailing party to include "an itemized

6   statement for any attorney or expert witness representing or

7   appearing in behalf of the party stating the actual time expended

8   and the rate at which fees and other expenses were computed."  28

9   U.S.C. § 2412(d)(1)(B).  Plaintiffs amply satisfy their burden of

10   production.  (<u>See generally</u> Frost, Olson Decls., filed May 19,

11   2006).  They request the court to award their attorneys Julia

12   Olson ("Olson") and Peter Frost ("Frost") $99,245 in fees for

13   316.9 hours of work.  (Pls.' Reply, filed August 2, 2006, at

14   23:1-10).  To determine reasonable attorney fees, the court must

15   multiply "the number of hours reasonably expended on the

16   litigation . . . by a reasonable hourly rate."  <u>Hensley v.</u>

17   <u>Eckerhart</u>, 461 U.S. 424, 433 (1983).  Accordingly, the court

18   first determines whether plaintiffs' requested rates are

19   reasonable, and then ascertains the reasonable hours worked.

20   **A.   Rate**

21       The EAJA limits the award of attorney fees to $125 per hour

22   unless the court identifies a cost of living increase or "a

23   special factor, such as the limited availability of qualified

24   attorneys for the proceedings involved" to justify a higher fee.

25   28 U.S.C. §2412(d)(2)(A).[5]

26

27       [5]   Where the court awards fees in excess of the statutory
rate based upon an existing "special factor," the higher rates

28   (continued...)

1    Plaintiffs' attorneys seek fee rates of $275, $300, and $325

2  for Olson's work in 2004, 2005, and 2006, respectively, and rates

3  of $325 and $350 for Frost's work in 2005 and 2006, respectively,

4  arguing that plaintiffs' attorneys satisfy the criteria required

5  for a "special factor" enhancement to the statutory rate under

6  the EAJA.  (Pls.' Mot. at 10:23-26.)  Plaintiffs correctly cite

7  the Ninth Circuit's three-part test to determine whether a

8  "special factor" exists such that the court may award fees

9  exceeding the statutory rate.  Love v. Reilly, 924 F.2d 1492,

10  1495 (9th Cir. 1991) (citing Prius v. Bowen, 869 F.2d 536 (9th

11  Cir. 1989)).  The attorney must 1) must possess distinctive

12  knowledge and skills developed through a practice specialty which

13  are 2) needed in the litigation and 3) are not available

14  elsewhere at the statutory rate.  Prius, 869 F.2d at 541-542.

15    Specifically, "environmental litigation is an identifiable

16  practice specialty that requires distinctive knowledge."  Love,

17  924 F.2d at 1496 (citation omitted).  In Love, the plaintiff's

18  attorney submitted an affidavit detailing his experience in court

19  and in administrative proceedings involving insecticides and

20  preliminary injunctions, such that the district court found he

21  had developed "distinctive knowledge" for purposes of EAJA

22  "special factor" fees.  Id.  Here, Olson has spent nine years and

23  Frost has spent fourteen years "litigating exclusively

24

25

_____

26    [5](...continued)
   subsume a cost of living increase.  Therefore, as the court here

27  awards plaintiffs' attorneys increased fees dependent upon the
   specialized nature of this case, the court does not detail the

28  appropriate cost of living increase which would be applicable
   otherwise.

1  environmental cases . . . ."  (Pls.' Mot. at 8:6-8, 8:22-23;

2  Olson Decl. at ¶¶ 4,6; Frost Decl. at ¶¶ 1-3, 5.)  In fact, this

3  court has held in a previous environmental case that Olson has

4  "specialized skills warranting an adjustment to her fees."

5  <u>Californians for Alternatives to Toxics v. Dombeck</u>, CIV. S-00-605

6  (E.D. Cal. 2004) (Karlton, J.)(Ex. G to Pls.' Mem. of P. & A. at

7  11:5-9).[6]  Further, the Ninth Circuit has held that both Olson

8  and Frost possess "distinctive knowledge and skill" required to

9  understand the "complex interplay between several statutory

10 schemes" including NEPA.  <u>Blackwell</u>, CIV. 00-01239, Ex. E to

11 Pls.' Mem. of P. & A. at 17.  As in <u>Blackwell</u>, here plaintiffs'

12 attorneys' distinctive skills in environmental litigation were

13 necessary to interpret NEPA and its relevant requirements, the

14 EIS and EA.

15     Additionally, where plaintiffs submit declarations from

16 plaintiffs and attorneys demonstrating that their attorneys'

17 distinctive skills were unavailable elsewhere at the statutory

18 rate, and the government fails to provide evidence to the

19 contrary, plaintiffs satisfy the last element of the <u>Love</u> test.

20 (<u>Id.</u> at 18).  Here, plaintiffs submitted a declaration from

21 plaintiff Patricia Clary ("Clary") stating that plaintiffs "were

22 unable to secure representation in this federal case from

23 qualified attorneys at the EAJA rate."  (Clary Decl., filed May

24 19, 2006, ¶ 3).  Defendants argue that since Clary never

25

26     [6]  Judge Karlton awarded Olson her requested fee rate of
   $175 per hour for her work in *1999, 2000, 2001, 2002*, and April
27 *2003*.  <u>Id.</u> at 9 n.5.  Environmental attorneys Sharon Duggan and
   David Williams were awarded a rate of $275 per hour for their
28 work on the case during the same years.  <u>Id.</u> at 25:19-24.

specifies "the nature of the [attorney] search . . . or whether she specifically looked in Sacramento, the relevant market," her declaration fails to show that attorneys with comparable skills were unavailable at the statutory rate. (Dfs.' Opp'n at 18:14-24.)  However, the court does not find authority, nor have defendants cited any, requiring plaintiffs to make such a specific showing.

Moreover, plaintiffs submit a declaration from Sharon Duggan ("Duggan"), an attorney specialized in environmental law and aware of billing rates in the "legal market in Sacramento," who previously collaborated with both attorneys on environmental cases. (Duggan Decl., filed May 19, 2006, ¶¶ 9-12).  Duggan states that she was previously awarded, in 1999, $235 an hour in a County of Sacramento case and also in 1999, $275 an hour in this district court for an environmental case, both awards in excess of the EAJA's statutory rate at the time.  (Id. at ¶ 9).

Finally, plaintiffs note that the Ninth Circuit awarded both Olson and Frost enhanced rates ranging from $250 to $300 and $275 to $325, respectively, for their work on Blackwell from 2002 to 2004.  (Pls.' Mot. at 10:26-28, 11:1-2).  Significantly, as in Blackwell, defendants do not introduce evidence that any attorney would represent plaintiffs in this case at the statutory rate. Further, in challenging plaintiffs' argument for enhanced fees, defendants fail to alternatively offer a different enhanced fee rate to be awarded to plaintiffs.  Therefore, plaintiffs satisfy a showing of a "special factor," such that the court awards Olson and Frost enhanced rates of $275, $300, and $325 an hour for

1   2004, 2005, and 2006, respectively.[7]

2   **B.   Reasonable Hours**

3         In awarding attorney fees ("fees"), the district court must

4   consider only those hours which are reasonably expended,

5   excluding any "excessive, redundant, or otherwise unnecessary"

6   hours.  <u>Hensley</u>, 461 U.S. at 434.  Specifically, where a party

7   brings multiple claims, failing on one claim "distinct in all

8   respects from" the other successful claims, the court cannot

9   include the hours that party expended upon preparing and

10  litigating the failed claim when calculating fees.  <u>Id.</u> at 440.

11  However, time expended on this fee motion may be included in

12  calculating the prevailing party's fee award.  <u>Commissioner, INS</u>

13  <u>v. Jean</u>, 496 U.S. 154, 162 (1990).

14        Aside from this motion for attorney fees,[8] this case

15  involves three stages of litigation for which plaintiffs seek to

16  recover fees: plaintiffs' motion for a TRO, plaintiffs' motion

17  _____

18        [7]   The court declines to grant Frost enhanced rates of
    $325 and $350, higher than those requested by Olson.  While the
19  Ninth Circuit awarded Frost enhanced rates at $25 per hour more
    than Olson in <u>Blackwell</u>, the court awarded fees based upon
20  evidence of the reasonable rates for attorneys in San Francisco.
    Here, however, the court must refer to the market rate of the
21  "forum district," Sacramento.  <u>Mendenhall v. National Transp.</u>
    <u>Safety Bd.</u>, 213 F.3d 464, 471 n.5 (9th Cir. 2000).  Plaintiffs do
22  not provide evidence differentiating both attorneys' experiences
    to justify awarding Frost a higher enhanced fee than Olson based
23  upon Sacramento prevailing rates.  Declarant Duggan only states
    that both attorneys "practice in a highly specialized field of
24  environmental law, and they are among the most proficient
    practioners."  (Duggan Decl. at ¶ 10).  The court, therefore,
25  awards both Olson and Frost the same enhanced rates.

26        [8]   Defendants do not object to plaintiffs' recovery for
    hours spent preparing this motion for attorney fees, costs and
27  other expenses.  Accordingly, the court awards plaintiffs
    attorney fees for Olson's 23.5 (including 5 hours on plaintiffs'
28  reply) and Frost's 4.7 hours spent on this motion.  The
    calculation of these hours is further detailed later.

1  for a PI, and defendants' motion to dismiss.[9]  Additionally,

2  plaintiffs seek to recover costs and other expenses.

3      **1.  Motion for a TRO**

4      Defendants first argue that the court should not award fees

5  for plaintiffs' time spent on the motion for a TRO, as plaintiffs

6  unreasonably delayed bringing the motion more than a year after

7  the claim became ripe.  (Dfs.' Opp'n at 12:1-12.)  Defendants are

8  correct that in ruling on plaintiffs' motions for a TRO and PI,

9  the court noted that plaintiffs delayed in bringing their action.

10 (Transc. of Motion for PI Hearing, filed October 19, 2005, at

11 4:20-24).  However, ultimately the court granted plaintiffs'

12 motions.  Plaintiffs explained in their motion for a TRO that

13 they "in good faith sought to avoid having to seek . . . [a

14 TRO]."  (Pls.' Mot. for a TRO; filed August 22, 2005, at 8:8-9.)

15 Specifically, plaintiffs stated that they "proposed [to

16 defendants] that the parties agree to a briefing schedule that

17 would *avoid the need* for an ex parte TRO application," but allow

18 the court time to decide upon the issue of preliminary relief

19 before CDF&G could continue with the Project.  (Id. at 8:13-17.)

20 Defendants rejected the proposal.  (Id. at 8:18.)

21     The EAJA permits the court to award "reasonable" attorney

22 fees.  28 U.S.C. § 2412(d)(2)(A).  The court finds that, since

23 plaintiffs resorted to filing a motion for a TRO only after

24

25          [9]   Plaintiffs submitted itemized statements detailing the
   number of hours they spent on this action.  While they itemize
26 these hours by date, they do not categorize hours by each stage
   of litigation.  However, defendants did categorize the number of
27 hours plaintiffs' attorneys spent on each phase of litigation,
   based upon plaintiffs' statements.  Unless otherwise indicated,
28 the court finds that defendants categorized plaintiffs' attorney
   fee hours accurately.

failing to reach an agreement with defendants regarding
preliminary relief, plaintiffs' time spent on the TRO motion was
reasonable for purposes of the EAJA.  As such, the court awards
plaintiffs fees for the time spent on the motion for a TRO.[10]

### 2.   Motion to dismiss

Defendants additionally oppose plaintiffs' recovery of
attorney fees for time spent litigating defendants' motion to
dismiss, as plaintiffs lost that motion.  The court agrees with
defendants.  Defendants' motion to dismiss stemmed from
plaintiffs' case becoming moot once the court granted plaintiffs'
PI request.  In dismissing plaintiffs' complaint, the court held
that defendants' met their "heavy" burden in establishing that
their alleged violation was unlikely to recur and that subsequent
events in the case, specifically the cancellation of the Project,
eliminated any alleged harm to plaintiffs.  (Mem. & Order, filed
February 27, 2006, at 10:5-7, 11:27-28, 12:1-2.)  Plaintiffs
contend that, in light of the Ninth Circuit's decision in Watson
v. County of Riverside to award fees to a plaintiff even for time
spent on claims that plaintiff lost, the court should award fees
for the time they spent on the motion to dismiss.  (Pls.' Reply
at 14:18-24).

However, plaintiffs do not dispute that "the district court
has discretion in determining the amount of a fee award."
Hensley, 461 U.S. at 438.  Specifically, if the plaintiffs'
losing claims are related to their successful claims, "the court

---

[10]     Defendants indicate that Olson spent 85.7 hours and
Frost spent 46.3 hours total on the TRO motion, all within 2005,
based upon plaintiffs' itemized statements of time expended.
(Dfs.' Opp'n at Ex. A-1, A-2).

must then evaluate the significance of the result achieved and calibrate the compensation accordingly." Outdoor Sys., Inc. v. City of Mesa, 997 F.2d 604, 619 (9th Cir. 1993)(citing Hensley, 461 U.S. at 434-437).  Related claims "will involve a common core of facts or will be based on related legal theories." Hensley, 461 U.S. at 435.  Here, the motion to dismiss involved facts distinct from those addressed in the other motions litigated in this case.  At the motion to dismiss stage, the court addressed whether plaintiffs' action became moot once defendant Service withdrew the special permit granted to CDF&G to execute the Project, *after* the court granted plaintiffs' motion for a PI. (Memo. & Order, filed February 27, 2006, at 1:25-28, 2:1-5).  In contrast, the motions for a TRO and PI centered around defendants' failure to prepare an EIS before authorizing CDF&G to proceed with the Project.  Furthermore, plaintiffs do not contend that they relied upon legal theories for the motion to dismiss related to their successful motions.  As such, the court declines to award plaintiffs attorney fees for time expended on the motion to dismiss.[11]

---

[11]    Defendants referred to plaintiffs' itemized statements to determine how many hours plaintiffs spent on the motion to dismiss.  (Dfs.' Opp'n at Ex. B-1, B-2).  According to defendants' calculations, in 2005 Olson spent 3 hours and Frost spent 33 hours on the motion to dismiss, and in 2006, Olson spent 1.4 hours and Frost spent 6.4 hours on the same motion.  However, defendants incorrectly incorporated hours plaintiffs' attorneys spent *before* defendants filed the motion to dismiss in its calculations.  The court finds that in 2005, Olson actually spent 2.2 hours and Frost spent 23.6 hours on the motion to dismiss. Defendants' calculations for hours spent in 2006 are correct. Accordingly, the court excludes only the hours plaintiffs spent on the motion to dismiss, *after it was filed*, from its calculations of attorney fees.

3.   **Motion for a preliminary injunction and administrative proceedings/state litigation**

While defendants do not contest plaintiffs' request for a fee award that includes time spent on the PI motion, defendants do argue that the court should prohibit plaintiffs from receiving compensation for their attorneys' work on administrative proceedings or state litigation regarding the Project. (Dfs.' Opp'n at 13:22-25, 14:1-8.)  The court is persuaded by defendants' argument.  The EAJA permits recovery for fees "incurred . . . in any civil action . . . in any court having jurisdiction over that action . . . ."  28 U.S.C. § 2412(d)(1)(A).  In light of section 504(a)(5), "the only part of the EAJA that allows fees and expenses for administrative proceedings conducted prior to the filing of a civil action," the Supreme Court held that a court may not award fees for administrative proceedings under section 2412(d)(1)(A). Melkonyan v. Sullivan, 501 U.S. 89, 93-94 (1991).

Where a prevailing party does not bring suit to recover fees under section 504(a)(5), the court cannot award fees for administrative proceedings unless "a civil suit has been brought, the court orders the parties to resolve an issue in an administrative proceeding, retains jurisdiction of the civil action, and the resolution of the action depends upon the outcome of the administrative proceedings upon jurisdiction of the civil action . . . ."  Dombeck, CIV. S-00-605, Ex. G to Pls.' Mem. of P. & A. at 22:5-23.  Here, plaintiffs do not bring this motion under section 504(a)(5), nor did the court previously order the resolution of any administrative proceeding.

19

1    Defendants note the number of hours plaintiffs spent on
2  administrative proceedings and state litigation in detail.   They
3  contend that the hours spent on this work should be excluded from
4  a fee award.   (Dfs.' Opp'n at 13:22-25, 14:1-8).   The court
5  agrees to exclude these hours to the extent they were spent
6  before plaintiffs' commenced this action or were spent on work
7  related to state litigation.

8    Plaintiffs nonetheless argue that their attorneys should be
9  compensated for time spent preparing this action prior to filing
10 their complaint, citing the Supreme Court's decision in Webb v.
11 Dyer County Bd. of Educ.   (Pls.' Reply at 17:14-15).   However, in
12 Webb, the Supreme Court noted that the administrative proceeding
13 was easily distinguishable from the judicial proceeding, such
14 that the district court correctly precluded recovery for time
15 spent on administrative work before the action was filed.   471
16 U.S. 234, 242-243 (1985).   Furthermore, where the court cannot
17 decipher from plaintiffs' records whether Olson's hours spent
18 during this action pertained to state or federal litigation, the
19 court declines to award attorney fees for the time expended.[12]
20 The court thereby reduces plaintiffs' fee award accordingly.

21

22    [12]    According to defendants' review of plaintiffs' itemized
   statements, Olson spent 10.5 hours in 2004 and 30.6 hours in 2005
23 on administrative and state litigation work.   (Dfs.' Opp'n at Ex.
   C).   The court finds that Olson did spend 10.5 hours in 2004 but
24 that she actually only spent 16.8 hours in 2005 on administrative
   work or state proceedings.   Olson spent the remaining 13.8 hours,
25 which defendants argue were also spent on non-compensable work,
   to develop this civil action.   Furthermore, the 30.6 hours of
26 work include 0.3 hours, expended on February 26, 2005, that
   defendants already included in the time spent on the motion to
27 dismiss for which plaintiffs cannot recover.   Accordingly, in
   fairness to plaintiffs, the court precludes plaintiffs from
28 recovering for 16.5 hours, not 30.6 hours, Olson spent in 2005.

1                          **V. Costs and Other Expenses**

2          In addition to fees, a prevailing party may recover costs

3    and other expenses pursuant to section 2412(a)(1) and

4    2412(d)(1)(A).  Plaintiffs request $3,143.10 in costs, $10,550.00

5    in expert witness fees, $1,150.00 in fees for attorney

6    declarations in support of the rates plaintiffs request and hours

7    plaintiffs claim,[13] and 3.8 hours of time spent on preparing

8    these declarations.  Defendants oppose plaintiffs' request for

9    $1,150.00 in compensation for the attorneys' declarations and the

10   3.8 hours Olson spent on these declarations.  (Dfs. Opp'n at

11   17:3-10).  They argue that the court did "not need the testimony

12   of counsel's associates . . . in order to determine the quality

13   of the representation in this case."  (Id.)  The court agrees

14   regarding the declarations of attorneys Axline and Yeates.[14]

15   However, the court relied upon Duggan's declaration in finding

16   that specialized attorneys were not available at the statutory

17   rate in Sacramento.  Therefore, Duggan's fee of $400 and Olson's

18   1.3 hours of time working with Duggan to prepare her declaration

19   are included in the fee award.

20

21

22   ⎯⎯⎯⎯⎯⎯⎯⎯⎯

23        [13]    Plaintiffs' fee request includes this cost.  (Pls.'
     Mot. at 12:27-28, 13:1-6).  However, the court was unable to
24   decipher how plaintiffs' included this cost with respect to the
     fee hours.  Thus, for purposes of calculating the total award to
25   plaintiffs, the court assumes this cost is included in the
     attorney fee portion of the award.

26        [14]    Plaintiffs requested $400 and $350 to compensate
     attorneys Axline and Yeates, respectively.  The court deducts
27   this cost from the total fee award.  Furthermore, the court
     excludes approximately 66% of the hours Olson spent working with
28   Axline and Yeates to prepare these declarations, 2.5 hours.

**VI. Conclusion**

After reducing plaintiffs' request for fees, costs and other expenses as appropriate, the court grants attorney fees in the amount of $78,402.50 and expenses in the amount of $12,943.00 to plaintiffs, for a total award of $91,345.50.[15]

**IT IS SO ORDERED.**

DATED: August 11, 2006

/s/ Frank C. Damrell Jr.
FRANK C. DAMRELL, Jr.
UNITED STATES DISTRICT JUDGE

---

[15]     See Attachment.

22

### ATTACHMENT "A"

The amount is based on the costs and fees sufficiently documented by plaintiffs' counsel, and the reductions discussed above.

### ATTORNEYS

__OLSON__

| Year | Rate per hr | Hours | Total Award |
|------|-------------|-------|-------------|
| 2004 | $275 | 0 | $0.00 |
| 2005 | $300 | 125.5 | $37,650.00 |
| 2006 | $325 | 21 | $6,825.00 |
| | | OLSON TOTAL: | $44,475.00 |

| Year | Hrs Originally Requested | Reduced By | Type of Work | Total Hrs Awarded |
|------|--------------------------|------------|--------------|-------------------|
| 2004 | 10.5 | 10.5 | Administrative proceedings/ state litigation | 0 |
| 2005 | 30.6 | 16.8 | Administrative proceedings/ state litigation | 13.5 |
| | 85.7 | 0 | TRO motion | 85.7 |
| | 25.5 | 0 | PI motion | 25.5 |
| | 3 | 2.2 | Motion to dismiss | 0.8 |

23

| 2006 | 1.4  | 1.4 | Motion to dismiss | 0  |
|------|------|-----|-------------------|----|
|      | 23.5 | 2.5 | Fee motion        | 21 |

**FROST**

| Year | Rate per hr | Hours | Total Award |
|------|-------------|-------|-------------|
| 2004 | $275 | 0 | $0 |
| 2005 | $300 | 108 | $32,400.00 |
| 2006 | $325 | 4.7 | $1,527.50 |
| | | **FROST TOTAL:** | $33,927.50 |

| Year | Hrs Originally Requested | Reduced By | Type of Work | Total Hrs Awarded |
|------|--------------------------|------------|--------------|-------------------|
| 2004 | 0 | 0 | N/A | 0 |
| 2005 | 46.3 | 0 | TRO motion | 46.3 |
|      | 52.3 | 0 | PI motion | 52.3 |
|      | 33 | 23.6 | Motion to dismiss | 9.4 |
| 2006 | 6.4 | 6.4 | Motion to dismiss | 0 |
|      | 4.7 | 0 | Fee motion | 4.7 |

24

**COSTS AND OTHER EXPENSES**

| **Purpose** | **Cost Originally Requested** | **Total Cost Awarded** |
|---|---|---|
| Expert witnesses:<br>Nancy Erman<br>Don Erman | $6,350.00<br>$4,200.00 | $6,350.00<br>$4,200.00 |
| Filing fees, transcripts, meals, postage, supplies, telephone, and travel expenses | $3,143.00 | $3,143.00 |
| | **Sub-Total:** $13,693.00 | |
| Time spent on attorney declarations by Axline, Yeates, and Duggan in support of fee motion | $1,150.00 already included in **fee** request | – $750.00<br>(For Axline's and Yeates' declarations) |
| | **Total:** $12,943.00 | |

**GRAND TOTAL EAJA AWARD:** $91,345.50

25